UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 19-219 |
|---|---|---|
| v. | * | SECTION: "L" |
| DAMIAN K. LABEAUD | * | |
|    a/k/a Damian Kevin Lebeaud | | |
|    a/k/a Damien K. Lebeaud | * | |
| LUCINDA THOMAS | | |
| MARY WADE | * | |
| JUDY WILLIAMS | | |
|    a/k/a Judy Lagarde | * | |
| DASHONTAE YOUNG | | |
| GENETTA ISREAL | * | |
| MARIO SOLOMON | | |
| LARRY WILLIAMS | * | |

\*   \*   \*

## FACTUAL BASIS AS TO DAMIAN LABEAUD

Should this matter have gone to trial, the government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the government in Count 1 of the Superseding Indictment now pending against the defendant, **DAMIAN LABEAUD**, charging him with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit wire fraud. The Defendant, along with his co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit wire fraud in connection with staged accidents, including two that occurred on June 6, 2017 and June 12, 2017.

In or around early 2017, the Defendant met with Attorney A at a restaurant to discuss the Defendant staging accidents for Attorney A. Mario Solomon was present during this meeting. At

this meeting, Attorney A told **LABEAUD** that he wanted **LABEAUD** to bring him staged accidents. Consistent with **LABEAUD**'s arrangement with other attorneys, the Defendant and Attorney A agreed that Attorney A would pay the Defendant $1,000.00 per passenger that was involved in a staged accident with an 18-wheeler tractor-trailer and $500.00 per passenger that was in a staged accident that did not involve a tractor-trailer. Per their agreement, Attorney A would either pay **LABEAUD** an advance, or would pay him for the accidents soon after they were staged. Attorney A paid **LABEAUD** in cash or check for staging accidents. As part of the scheme, after each staged accident, **LABEAUD** would connect the passengers with Attorney A so that they could complete the necessary paperwork for Attorney A to represent them. **LABEAUD** understood that as part of the scheme, Attorney A would instruct the passengers to be treated by certain doctors and healthcare providers, often at an inflated cost, in order to obtain larger settlements.

Attorney A knew that the Defendant was staging the accidents and the two would often discuss the accidents before they happened either in person or over the phone, through calls or text messages. In an effort to evade detection, Attorney A would, for example, direct the Defendant to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras. In order to conceal their activity, **LABEAUD** and Attorney A communicated regarding the staged accidents using coded language. For example, in text messages, Attorney A and **LABEAUD** would sometimes use fishing terms to refer to the staged accidents. As an example, on May 19, 2017, **LABEAUD** texted Attorney A, "I'm going fishing this morning & I was trying 2 c if you was gd 4 now r u would like somemore of them big bull red's?" Attorney A responded, "Good for now. Chat next week." The following week, on May 24, 2017, **LABEAUD** texted Attorney A, "Gd morning! Do u want somemore fish 2day 4 lunch bro!!" Attorney A responded, "Yes, sir," and **LABEAUD** confirmed, "...I will have u 4 more 2day ok

2

AUSA *BR*
Defendant *DKL*
Defense Counsel

homie!!" On June 20, 2017, **LABEAUD** texted Attorney A, "Say bro we done here! . . . 3 Big red's & 2 lil trout as of now!!" On June 22, 2017, Attorney A texted **LABEAUD** asking, " . . . What do I owe you for?" **LABEAUD** responded, "3 last week & 2 da other day! So it's 4 all together!!" Later in the day, Attorney A texted **LABEAUD**, "On way. Bout 10 mins. Had to stop n get some bread for the fish."

In some cases, **LABEAUD** was the driver, or "slammer," of the vehicle in the staged accident, and in other cases he served as the "spotter," or the person driving the getaway vehicle. As a slammer, **LABEAUD** would exit the vehicle in which he had staged the accident immediately after causing the collision and flee the scene. The most common method **LABEAUD** used in order to stage accidents with tractor-trailers was to wait until the tractor-trailer was about to make a turn or change lanes, and then speed up in order to cause a collision on the blind side of the tractor-trailer driver. As a spotter, **LABEAUD** would follow in a separate vehicle and then pick up the slammer from the scene immediately after the accident. **LABEAUD** recruited several others, including Mario Solomon, to serve as his spotter. **LABEAUD** would pay whoever helped him with staging the accident in either the spotter or slammer role. Throughout the course of the conspiracy, **LABEAUD** utilized several different spotter vehicles. The scheme also included a number of intermediaries who recruited passengers to participate in the staged accidents.

According to the Defendant, he staged numerous accidents for various attorneys, including at least 40 staged accidents with tractor-trailers for Attorney A. Two of the accidents that the Defendant staged are described below:

### *June 6, 2017 Staged Accident*

On June 5, 2017 – the day before one of the staged accidents – **LABEAUD** was notified


AUSA
Defendant
Defense Counsel

by an intermediary who recruited passengers that they were prepared to meet the following morning to stage an accident. **LABEAUD** called Attorney A the day before the accident. On the following day, June 6, 2017, **LABEAUD** and Mario Solomon spoke with each other several times in order to discuss the accident that **LABEAUD** planned to stage that day with Solomon's assistance as the spotter. Prior to the accident, the Defendant and Solomon met Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young at a Burger King restaurant in New Orleans. At approximately 10:58 A.M. that morning, **LABEAUD** called Attorney A. At approximately 12:30 P.M., the Defendant drove with Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young in Lucinda Thomas's vehicle, a 2009 Chevrolet Avalanche ("the Avalanche") east on Chef Menteur Highway in New Orleans and intentionally collided with a 2017 Freightliner tractor-trailer that was merging onto Chef Menteur Highway. Mario Solomon was following the Defendant in his silver Chevrolet Silverado pick-up truck.

Immediately after the accident, **LABEAUD** exited the Avalanche and instructed Lucinda Thomas to get behind the wheel of the Avalanche to make it appear that she was driving the vehicle at the time of the accident. Prior to exiting the vehicle, **LABEAUD** instructed the passengers to tell the police that the tractor-trailer was at fault. **LABEAUD** then left the scene of the accident. Between 12:39 P.M. and 1:29 P.M., **LABEAUD** and Solomon called each other several times to coordinate Solomon picking up **LABEAUD** in his silver Chevrolet Silverado pick-up truck. At approximately 12:44 P.M., Attorney A sent **LABEAUD** a text message. At approximately 1:36 P.M and 1:43 P.M., **LABEAUD** called Attorney A. At approximately 1:45 P.M., **LABEAUD** returned to the scene of the staged accident with Solomon. At that time, **LABEAUD** made false statements to New Orleans Police Department ("NOPD") officers who were on the scene stating that he had witnessed the accident, and that the driver of the 2017 Freightliner tractor-trailer had

been at fault. At approximately 1:58 P.M., Attorney A called **LABEAUD**, and at approximately 3:06 P.M. and 3:32 P.M., **LABEAUD** called Attorney A. The purpose of these calls was to inform Attorney A that the accident had been successfully staged and to arrange a meeting with the passengers and Attorney A. Attorney A agreed to take the staged accident.

Following the June 6, 2017 staged accident, **LABEAUD**, Mario Solomon, Lucinda Thomas, Judy Williams, and Dashontae Young all met with Attorney A at a Raising Cane's restaurant on Chef Menteur Highway. At this meeting, Attorney A discussed representation of Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young, and all four individuals hired Attorney A to represent them. During this meeting, Attorney A also paid **LABEAUD** $7,500.00, via check, for staging the June 6, 2017 accident and another accident. On or about June 7, 2017, **LABEAUD** cashed the $7,500.00 check he received from Attorney A. Using funds that he received from Attorney A, **LABEAUD** then paid Solomon for serving as the "spotter."

On March 6, 2018, Attorney A filed a personal injury lawsuit on behalf of Lucinda Thomas, Mary Wade, and Judy Williams against SRT, Covenant, IQS Insurance Risk Retention Group, Inc. ("IQS")—SRT and Covenant's insurer—seeking to obtain monetary damages in connection with the June 6, 2017 staged accident. The lawsuit was filed in the Civil District Court for the Parish of Orleans in the State of Louisiana and subsequently removed to the United States District Court for the Eastern District of Louisiana, assigned Civil Action Case Number 18-2472, and allotted to Section "A." The allegations in the lawsuit were false in that they did not contain information about how **LABEAUD** was the driver of the Avalanche during the accident and how he intentionally caused the June 6, 2017 accident with the 2017 Freightliner tractor-trailer with Attorney A's knowledge.


AUSA
Defendant
Defense Counsel

Sometime between September 2018 and April 2019, Attorney A contacted **LABEAUD** because Attorney A was concerned that the owner and insurer of the 2017 Freightliner tractor-trailer (Southern Refrigerated Transport, Inc. ("SRT"), Covenant Transportation Group ("Covenant"), and IQS Insurance Risk Retention Group, Inc. ("IQS")) uncovered information revealing that Mary Wade and **LABEAUD** had communicated by telephone on June 6, 2017 prior to the staged accident. This fact presented an issue because Attorney A, Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young had been concealing the fact that **LABEAUD** was more than a percipient witness in connection with the June 6, 2017 staged accident, and had been the driver in that accident. In an attempt to address the issue, Attorney A instructed **LABEAUD** to contact Lucinda Thomas and Mary Wade and instruct them to "get their stories straight." During a subsequent meeting, Attorney A gave **LABEAUD** an envelope containing phone records, pleadings, and depositions establishing that Lucinda Thomas and Mary Wade had lied under oath in their depositions, which took place on September 13, 2018.

In representing Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young, Attorney A caused interstate wires to be transmitted to recover monetary damages for Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young in connection with the staged accident. Namely, Attorney A negotiated a settlement on behalf of Dashontae Young prior to filing a lawsuit court. On approximately November 27, 2017, Attorney A settled Dashontae Young's claim with Covenant Transportation Group ("Covenant"), the parent company of Southern Refrigerated Transport, Inc. ("SRT"), which operated the 2017 Freightliner tractor-trailer involved in the June 6, 2017 staged accident. In connection with that settlement, after November 27, 2017, Attorney A deposited a $20,000 settlement check for Dashontae Young that Attorney A received for settling her claim. In effectuating the settlement, Dashontae Young caused Covenant to issue from its



Chase account check number 50047 dated November 17, 2017 in the amount of $20,000. Attorney A then deposited that check into an Iberia account. In depositing the check into the Iberia account, Attorney A caused an electronic wire communication to be sent from Louisiana to the Federal Reserve in Atlanta, Georgia.

### *June 12, 2017 Staged Accident*

On June 12, 2017, the Defendant staged another accident with the assistance of Solomon, who served as the "spotter," and Larry Williams, who recruited the passengers. Prior to the accident, **LABEAUD** informed Larry Williams that Attorney A would handle everything. On the morning of the accident, Larry Williams picked up **LABEAUD**, Genetta Isreal, and another individual. Prior to the accident, **LABEAUD** exchanged several calls with Solomon to coordinate the accident. Shortly before the accident, **LABEAUD** called Attorney A. **LABEAUD** then drove a 2005 Chevrolet Trailblazer ("Trailblazer") with Larry Williams, Genetta Isreal and another individual as passengers to the Danziger Bridge and parked the Trailblazer in the far right-lane heading east on Chef Menteur Highway to locate an 18-wheeler tractor-trailer to collide with. At around the same time, Solomon waited in his Chevrolet Silverado pick-up truck on the Danziger Bridge immediately behind the Trailblazer operated by **LABEAUD**. At approximately 11:30 A.M., **LABEAUD** located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by Southeastern Motor Freight, Inc. ("SMF") driving east on Chef Menteur Highway.

Immediately after the accident, **LABEAUD** exited the Trailblazer, instructed Larry Williams to get behind the wheel of the Trailblazer, and left the scene. At 11:47 A.M., **LABEAUD** called Solomon, who then picked up **LABEAUD** after **LABEAUD** fled from the Trailblazer on foot. When NOPD arrived at the scene, Larry Williams falsely reported that he had been the driver of the Trailblazer and that the tractor-trailer had struck his vehicle.

7



After the accident, **LABEAUD** contacted Attorney A and arranged a meeting at Attorney A's office. **LABEAUD**, Larry Williams, Genetta Isreal, and another individual went to Attorney A's office in order to sign the necessary paperwork to retain Attorney A to represent Larry Williams, Genetta Isreal, and another individual in connection with seeking monetary damages from the owner and insurer of the 2015 Peterbilt tractor-trailer in connection with the staged accident that had taken place on June 12, 2017. Larry Williams, Genetta Isreal, and another individual all hired Attorney A to represent them. Ultimately, on June 30, 2017, Attorney A paid **LABEAUD** $5,000.00 for staging the June 12, 2017 accident and another accident. **LABEAUD** then gave a portion of that $5,000.00 to Solomon for his assistance with staging the accident.

On June 12, 2018, Attorney B, an attorney who worked with Attorney A, filed a personal injury lawsuit on behalf of Larry Williams, Genetta Isreal, and another individual against SMF and its insurers, Hudson Specialty Insurance Company and Napa River Insurance Services ("NAPA"), in the Civil District Court for the Parish of Orleans in the State of Louisiana. On June 27, 2018, an employee of SMF in Jefferson, Louisiana sent an email that traveled across state lines to an employee of NAPA in Indianapolis, Indiana that attached the lawsuit. Further, during the course of the lawsuit, Attorney B made a settlement demand attempting to resolve the case via email. On December 20, 2018, Larry Williams and Genetta Isreal provided false testimony in their respective depositions taken in conjunction with the lawsuit filed by Attorney B.

In sum, the government's evidence would prove the Defendant, **DAMIAN LABEAUD**, conspired to commit wire fraud by agreeing with Attorney A and others to cause staged accidents with 18-wheeler tractor-trailers and that **LABEAUD** received payment from Attorney A and others for his role in staging accidents for passengers who would subsequently become clients of Attorney A and other attorneys. The government's evidence would also prove that the Defendant

8



AUSA
Defendant
Defense Counsel

knew that his co-conspirators—the passengers in these staged accidents and the attorneys representing them—would seek to obtain monetary damages from the owners and insurers of those 18-wheeler tractor-trailers. The government's evidence would prove that the Defendant knew that these accidents were premised on falsehoods because they were staged. Further, the government's evidence would provide that the Defendant's co-conspirators caused the use of interstate wire communications to facilitate their recovery with these staged accidents.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **LABEAUD**, and/or the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **LABEAUD**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and admissible tangible exhibits in the custody of the FBI.

READ AND APPROVED:

DAMIAN LABEAUD
Defendant

STEVEN LEMOINE
Counsel for Defendant

BRIAN M. KLEBBA
Assistant United States Attorney

9